Dennis, Appellant, *v.* E. J. Lavino & Company.

Argued March 16, 1964. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Donn I. Cohen,* with him *Cohen, Senft & Rubin,* for appellant.

*Thomas A. Ehrgood,* with him *Ehrgood & Ehrgood,* for appellee.

OPINION BY WOODSIDE, J., June 12, 1964:

This is an appeal from an order of the Court of Common Pleas of Lebanon County reversing an order of the Workmen's Compensation Board which allowed compensation on a petition for reinstatement of compensation filed by the claimant after the two years limitation had run.

The claimant suffered a compensable injury to his leg on January 9, 1959, as a result of which a compensation agreement was entered into on February 25, 1959. Benefits were paid until the final receipt was signed by the claimant on March 23, 1959. On August 14, 1961, more than two years and four months after

the execution of the final receipt, the claimant filed a petition for reinstatement.

Section 434 of The Pennsylvania Workmen's Compensation Act, as amended, 77 P.S. §1001, provides: "A final receipt . . . shall be prima facie evidence of the termination of the employer's liability to pay compensation under such agreement or award: Provided, however, That the board or a referee . . . may, at any time within two years from the date to which payments have been made, set aside a final receipt, upon petition filed with the board, if it be conclusively proved that all disability due to the accident in fact had not terminated."

The legislature made the filing of the petition within the specified time an express condition of the right to obtain an additional award of compensation, and intended that the failure to file it within the specified time should operate as an absolute bar of the right. The courts may not extend the period ex gratia in aid of a meritorious claim or to relieve against the hardship of particular circumstances. However, the courts can permit a claim to be filed after the time prescribed in the statute if fraud or its equivalent is shown, which in this connection includes an unintentional deception. The evidence to support such a claim must be clear and precise, more than of doubtful weight. *Thorn v. Strawbridge & Clothier*, 191 Pa. Superior Ct. 59, 61, 62, 155 A. 2d 414 (1959).

A final receipt in a workmen's compensation case "is prima facie evidence of the termination of the employer's liability to pay compensation and must control unless there be of record *conclusive* proof that the receipt was procured by fraud, coercion or other improper conduct on the part of the employer or was founded on a mutual mistake of law or of fact." *McGahen v. General Electric Company*, 406 Pa. 57, 72, 177 A. 2d 85 (1962).

The claimant contends that the defendant and its insurance carrier should be estopped from raising the statute of limitations because they misled him by giving him medical treatment and not advising him of the necessity to file a claim for reinstatement of compensation.

After the accident, the claimant returned to work on March 17, 1959, and continued working until July 7, 1961, except between July 10, 1960 and May 8, 1961 when the employer's plant was closed. Trouble with his injured leg caused him to cease work on July 7, 1961, but this was more than two years after his signing of the final receipt on March 23, 1959. In the meantime, the employer's company physician, paid by the insurance carrier, treated the claimant five times between September 28 and October 19, 1959, and ten times in February and March of 1961. The claimant was also treated nine times between April 8 and June 25, 1961, but this was after the statute of limitations had run. The insurance carrier arranged, after notice from the employer, to have the claimant examined by Dr. Forker, one of its physicians. The examination was made February 20, 1961. Dr. Forker gave a written report of the examination to the insurance company on March 1, 1961, but gave no information to the claimant.

On the basis of these facts the referee found that the claim was barred by §434, supra, but the board found that the "insurance carrier and/or the defendant company did have knowledge which should have been imported to the claimant with advice that said defendant or carrier would accept or reject a claim for compensation benefits and that it then would be the duty of the claimant to take whatever legal action he deemed fit." The board thereupon concluded that "the defendant is estopped from raising the bar of the

statute because claimant was misled and deceived whether intentionally or unintentionally."

President Judge GATES, speaking for the court below, concluded that there is "absolutely no evidence in this record that the claimant was prevented from filing his reinstatement petition in time by any act of the defendant. Indeed, there is no evidence that claimant made or attempted to make a claim for additional compensation until five (5) months after the statutory period had expired. The claimant knew that he had continued trouble with his leg. In response to the Referee's inquiry as to why the claimant did not file his workmen's compensation claim, his answer was not that he thought his claim was being processed by the company, or that he was relying on someone else to do it for him. The answer was simply, 'I didn't know any better what to do.' It has been frequently said that attempts by courts to relieve against the hardships of a particular case tend to make bad law. The only way we could logically extend the statute here would be to impose upon an employer or insurance carrier the duty of advising a claimant of his right to file for workmen's compensation after the defendant or the insurance company receives knowledge or information that a claim might be sustainable. We do not believe that this is or should be the law, . . ."

The appellant relies upon *Meyers v. Lehigh Valley Transportation Co.,* 138 Pa. Superior Ct. 569, 10 A. 2d 879 (1940) and *Behanna v. Meyers,* 158 Pa. Superior Ct. 208, 44 A. 2d 600 (1945). These cases are inapposite. Neither opinion made a final determination of the case. The *Lehigh Valley* case was remanded to the board for further hearing, and the appeal in the *Behanna* case was quashed as interlocutory.

In the *Lehigh Valley* case this Court noted that "If claimant was deceived or misled in connection with filing his claim petition by defendant and its insur-

ance carrier . . . the running of the statute would be tolled," but decided that "on the present state of the record . . . the conclusion of the court below that defendant by its conduct was estopped from invoking the statute of limitations cannot be sustained. In the absence of explicit findings of fact we cannot determine that the statute was tolled."

In the second *Behanna* case, 163 Pa. Superior Ct. 200, 60 A. 2d 608 (1948), this Court affirmed the holding that the employer and his carrier were estopped from asserting the bar of statute of limitations. There the evidence established that the claimant had been continuously assured by his employer that he (the employer) "would file the necessary report." In addition, the claimant had signed a statement of the nature and cause of the accident for the insurance carrier, and was interviewed by the agent of the insurer as well as submitting to medical examination. It is clear that he relied upon his employer and was misled by him into believing his claim had been properly made.

The appellant argues further that the payment of medical expenses by the insurance carrier tolled the statute of limitations. Payment for medical or hospital services do not constitute a payment of compensation, and do not toll the statute of limitations. *Paolis v. Tower Hill Connellsville Coke Co.,* 265 Pa. 291, 108 A. 638 (1919); *Rowles v. State Workmen's Ins. Fund,* 141 Pa. Superior Ct. 193, 196, 14 A. 2d 551 (1940) and *Guy v. Stoecklein Baking Co.,* 133 Pa. Superior Ct. 38, 43, 1 A. 2d 839 (1938).

The appellant asks us to reverse this long established principle. To do so would be a grievous mistake. Since the early days of workmen's compensation, the insurance carriers have been liberal in paying medical and hospital bills beyond those required by the statute. This is a fact appearing in numerous report-

ed cases and well known by those familiar with workmen's compensation practices. The insurers pay for this treatment to help the injured employes regain their health, which minimizes their future disability and reduces the liability of the insurance carrier for future compensation payments. Even if the reason for the insurance carriers' desire to reduce or prevent future disability of injured employes is to save the carriers money, the injured employes are the chief beneficiaries of the practice. Condemning or penalizing the insurance carriers for voluntarily paying these medical and hospital bills would discourage their continuing the practice. Injured employes would suffer most from the abandonment of the practice. The rule that medical payments do not toll the statute of limitations was established by the Supreme Court on the basis of the statute. It is a sound rule with beneficial results. It should not be changed, but even if we were to think otherwise, we would be presumptuous to attempt to change a rule so firmly established by the Supreme Court.

We are urged here to impose upon the defendant and its insurance carrier a duty to advise the defendant of his legal rights. The courts have always, and quite properly, held that the defendant and his insurance carrier may not mislead an injured employe, but it has never held that there is the duty imposed upon them to affirmatively advise the claimant of his rights.

Order affirmed.

MONTGOMERY, J., would reverse and reinstate the award of the Board.